UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SHERRIE BAKER, *et al.*, )<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ATLANTIC RICHFIELD COMPANY, *et al.*, )<br>Defendants. ) | CAUSE NO.: 2:17-CV-429-JVB-JPK |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Leave to File Second Amended Complaint [DE 168]. On August 23, 2021, presiding District Judge Joseph S. Van Bokkelen granted Defendants' dispositive motions and dismissed the complaint in its entirety, but permitted Plaintiffs to file a motion to amend the complaint. Oral argument was heard on April 28, 2022. For the reasons discussed below, the motion to amend is granted for relief different than requested, and Plaintiffs will be permitted to pursue some of their proposed claims.

**I. FACTUAL BACKGROUND**

The proposed amended complaint names six defendants: E.I. Dupont de Nemours and Company ("DuPont"); the Chemours Company ("Chemours"); Hammond Group, Inc.; Hammond Lead Products, LLC; Halstab, LLC; and Halox, LLC (collectively, the "Hammond Defendants"). The general allegations are similar to those in the prior complaint. Defendants allegedly owned or purchased lead refineries and other manufacturing facilities in East Chicago, Indiana. The 49 plaintiffs were residents of the nearby West Calumet Housing Complex (the "Complex") or students at the nearby Carrie Gosch Elementary School. Plaintiffs allege that, at various times between 1910 and 1985, the companies introduced contaminants (including lead, arsenic, and other substances) into the air, soil, and/or groundwater. This caused Plaintiffs to suffer an increased risk

of a variety of illnesses, as well as severe emotional distress. Some have already developed illnesses allegedly caused by the contaminants.

Defendants failed to warn Plaintiffs about the contamination. Plaintiffs were unaware of the contamination and had no reason to know about it until July 25, 2016, when East Chicago Mayor Anthony Copeland sent a letter to the Complex's residents, informing them that the ground within the Complex was highly contaminated with lead and arsenic.

In their prior complaint [DE 13], Plaintiffs brought claims of strict liability, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. In dismissing that complaint, Judge Van Bokkelen determined as follows:

- Based on Plaintiffs' allegations, they did not learn about the danger posed by the contamination until July 25, 2016, and therefore the lawsuit would not be dismissed for failure to file within the applicable limitations period;
- With regard to the negligence claims, a property owner who processes hazardous materials on its land owes a duty not to contaminate neighboring property;
- Although Plaintiffs had alleged they were exposed to contaminants, they had not sufficiently alleged injury, as was required to sustain negligence and strict liability claims;
- Plaintiffs had not sufficiently alleged that Defendants acted with the intent to harm Plaintiffs emotionally, as required for a claim of intentional infliction of emotional distress.

[DE 163]. In their proposed amended complaint, Plaintiffs seek to bring individual claims of negligence and negligent infliction of emotional distress, and a separate cause of action for medical monitoring. [DE 168-1].

## II. ANALYSIS

When a party seeks leave to amend a complaint, the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Seventh Circuit encourages granting one chance to amend after the dismissal of a complaint, to ensure that cases are resolved on the merits rather than technicalities of pleading: "[I]t is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

Leave to amend may be denied "where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice . . . or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991). "Futile repleadings include restating the same facts using different language, reasserting claims previously determined, and the inability to survive a motion to dismiss." *Naperville Smart Meter Awareness v. City of Naperville*, 114 F. Supp. 3d 606, 610 (N.D. Ill. 2015) (citing *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014). The Court must therefore consider whether the facts alleged are sufficient to state a claim under Indiana law. "Where state law provides the rule of decision, the federal courts must predict how the highest court of the state would decide the case if presented with the case today." *Klunk v. Cnty. of St. Joseph*, 170 F.3d 772, 777 (7th Cir. 1999). Decisions of the Indiana Court of Appeals provide a "strong indication of how [the Indiana] Supreme Court would decide a similar

3

question, unless there is a persuasive reason to believe otherwise." *Gen. Accident Ins. Co. of Am. v. Gonzales*, 86 F.3d 673, 675 (7th Cir. 1996).

Nonetheless, "a court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted." *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). In summary, the Court will attempt to discern whether any or all of Plaintiffs' claims would survive a motion to dismiss. But unless the Court is "certain" of dismissal, the proposed amendment will not be denied as futile. *See also Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) ("Unless it is certain from the face of the complaint that any amendment would be futile . . . [the] court should grant leave to amend after granting a motion to dismiss.").

A.   **Prejudice/Undue Delay/Bad Faith**

Several defendants object to the proposed amendment on the grounds of prejudice or undue delay. Although the passage of time can support denial of a motion to amend, "[d]elay must be coupled with some other reason. Typically [that is] . . . prejudice to the non-moving party." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (quoting *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004)). Courts consider factors such as the number of previous amendments, the reason for the delay, how long the plaintiff knew about any newly pled facts, and the procedural posture of the case. *Bennett v. Crane*, No. 1:16-CV-00423-TLS-SLC, 2019 WL 1785533, at *2 (N.D. Ind. Apr. 24, 2019).

Turning first to the timeline: This case has been pending since September 2017, but the Court does not believe Plaintiffs are intentionally delaying the litigation. Since the case was filed in state court, there has been a removal [DE 1]; a contested motion to remand [DE 41]; a stay of roughly nine months, at defendants' request, while the remand decision was appealed [DE 90,

4

108]; followed by the previous round of dispositive motions, which were resolved in August 2021 [DE 163]. The Court granted Plaintiffs until October 15, 2021, to seek leave to amend the complaint, and this motion was timely filed.

Some defendants argue that the facts of the case have not changed, so Plaintiffs should have pled any "new" details in their previous complaint, or when the motions to dismiss apprised them of the inadequacies. While that would have sped things up, "a formal motion for leave to amend was not necessary at the Rule 12(b)(6) stage, and [Plaintiffs were] entitled to wait and see if any pleading problems the court might find could be corrected." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). Consistent with Seventh Circuit precedent favoring the resolution of cases on the merits, Judge Van Bokkelen explicitly directed that Plaintiffs be allowed to ask for another chance to amend the complaint. Having reviewed the record, the Court does not believe that Plaintiffs were sandbagging[1], or that the proposed amendment reflects a lack of diligence warranting denial of the motion to amend. *Cf. McCoy*, 760 F.3d at 687 (denying leave to amend where "the unexplained delay looks more like procedural gamesmanship than legitimate ignorance or oversight").

**B.   Negligence**

Plaintiffs again attempt to bring negligence claims based on Defendants' failure to protect from contamination the land where plaintiffs would eventually live or attend school. "Prevailing on a negligence claim requires fulfillment of three elements: 1) duty owed to plaintiff by the defendant; 2) breach of duty by allowing conduct to fall below the applicable standard of care; and

---

[1] The Court disagrees with the Hammond Defendants' argument that the proposed amendment was offered in bad faith. [DE 171 at 10]. These defendants assert, correctly, that Plaintiffs only attempted to bring a medical monitoring claim once they were told their negligence claims could not proceed. Although it may be bad strategy, it is not necessarily bad faith to pursue a new theory of relief when the initial theory is foreclosed. It appears to the Court that Plaintiffs are simply looking for any legal mechanism through which to be compensated for their alleged exposure to potentially harmful contaminants.

5

3) compensable injury proximately caused by defendant's breach of duty." *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017). Judge Van Bokkelen rejected arguments by various defendants[2] that Plaintiffs did not properly allege duty, breach, and causation, but found that Plaintiffs had not adequately alleged injury. [DE 163 at 11-13].

Plaintiffs' negligence claims depend on whether their revised allegations state a cognizable injury. Plaintiffs allege that each of the 49 named plaintiffs "has experienced and/or suffered an increased risk" of 34 different physical injuries. [DE 175-1, ¶¶ 12-60]. Of the 49, 13 allege that they presently suffer from ailments caused by the contaminants. [*See id.* ¶¶ 19-21, 24-29, 45, 58-60]. The Court first considers the plaintiffs who have not alleged a present physical injury.

### 1. Plaintiffs with no present physical injury

Judge Van Bokkelen found that Plaintiffs had "alleged *exposure* to environmental contaminants, but . . . not alleged any resulting *injury*. '[T]he threat of future harm, not yet realized, is not enough' to satisfy the damages element of a negligence action." (emphasis in original) (quoting *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F. Supp. 2d 1069, 1086 (S.D. Ind. 2001)). Plaintiffs essentially argue that the physical impact of the exposure to contaminants, and attendant risk of future injury, is sufficient to plead a negligence claim.[3]

It was not necessary for Judge Van Bokkelen to specifically address this question in his earlier rulings, and the Court is not aware of an Indiana case squarely addressing it. However, the Court is informed by similar cases in the asbestos context. Even when asbestos exposure results in physical change, or so-called "subclinical injury" to the affected person, a cause of action accrues

---

[2] Judge van Bokkelen found that Plaintiffs had not adequately alleged duty as to Atlantic Richfield Company, but that entity is not named in the proposed amended complaint.

[3] For example, Plaintiffs allege: "Lead affects almost every organ and system in the human body" [DE 168-1 ¶ 127]; "Children exposed to even low levels of lead develop difficulties learning" [¶ 130]; "The Centers for Disease Control and Prevention states that '[n]o safe blood lead level in children has been identified.'" [¶ 131].

6

only when a current, diagnosable illness develops. *See AlliedSignal, Inc. v. Ott*, 785 N.E.2d 1068, 1075 (Ind. 2003) (limited on other grounds by *Myers v. Crouse-Hinds Div. of Cooper Indus., Inc.*, 53 N.E.3d 1160 (Ind. 2016)); *Jurich v. John Crane, Inc.*, 824 N.E.2d 777, 782 (Ind. Ct. App. 2005). These cases are not exactly on point because they are guided by Indiana's products liability statute of repose. However, the Indiana Supreme Court approvingly cited cases in other jurisdictions holding that mere physiological changes, or subclinical injury, were not compensable in tort law. *See AlliedSignal*, 785 N.E.2d at 1075 n. 8 (citing, *e.g.*, *Simmons v. Pacor, Inc.*, 543 Pa. 664, (1996); *Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 542 (Me. 1986)); *Ott v. AlliedSignal, Inc.*, 827 N.E.2d 1144, 1155-56 (Ind. Ct. App. 2005) (discussing the cited cases). This is a strong indicator of the Indiana Supreme Court's view of the requirement of present physical injury in a tort case. *See Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 638-39 (7th Cir. 2007) (citing *AlliedSignal* for the premise that exposure "do[es] not give rise to a legally cognizable injury," to predict how the Indiana Supreme Court would decide damages for a negligence claim); *Morris v. Arcelormittal USA, Inc.*, No. 2:09-CV-108-RLM-PRC, 2010 WL 11680298, at *3 (N.D. Ind. Aug. 12, 2010) (addressing a nuisance claim: "Just as exposure to asbestos doesn't necessarily result in an asbestos-related illness or disease, neither does exposure to allegedly toxic air contaminants necessarily result in cancer or the other illnesses and diseases identified by the plaintiffs."). Although not binding here, the Court is further persuaded by the reasoning in cases from the supreme courts of Illinois, Michigan, and Kentucky, reaching similar conclusions based on general principles of tort law.[4]

---

[4] In *Berry v. City of Chicago*, 181 N.E.3d 679 (Ill. 2020), plaintiffs alleged that the city's negligent conduct "placed them at increased risk of having lead in their water supplies and, therefore, at increased risk of having lead enter their bodies and of suffering lead poisoning." There was no allegation of present physical injury. The court observed: "Almost anything that a person does while living and working in the world can create a risk of harm to others. The long-standing and primary purpose of tort law is not to punish or deter the creation of this risk but rather to compensate victims when the creation of risk tortiously manifests into harm. . . . A person may pursue a cause of action in tort

7

Plaintiffs essentially argue that a risk of injury is itself a kind of injury.[5] The Court understands the reasoning behind that argument, but it is contradicted by the case law. Plaintiffs made similar allegations in the complaint Judge Van Bokkelen rejected. [*See, e.g.,* DE 13 ¶ 115 (the contaminants "have the potential to cause serious harm" to the plaintiffs), ¶ 154 ("Each Plaintiff has seen an increase in risk of disease as a result of his/her exposure")]. They have fleshed out these allegations, by describing the potential injuries in more detail, but they have not resolved the problem Judge Van Bokkelen identified, nor pointed to any new authority that compels a different result. As to the negligence claims of the plaintiffs not suffering a present physical injury, the Court finds that the proposed amendment is futile, and those claims will not be permitted to proceed.

---

once harm occurs. Given this fact, there is little justification for imposing civil liability on one who only creates a risk of harm to others." 181 N.E.3d at 688 (citing Oliver Wendell Holmes Jr., The Common Law 144 (1881)).

In *Henry v. Dow Chemical Co.*, 701 N.W.2d 684 (Mich. 2005), the court considered whether a class of plaintiffs, with no present physical injury, could sustain a negligence claim based on their exposure to dioxin. The plaintiffs expressly did not seek "compensation for physical injury or for the enhanced risk of future physical injury" but sought a medical monitoring program as damages. *Id.* at 689 n. 4. The court held that the plaintiffs needed a present physical injury to proceed, and the additional expense that the plaintiffs would incur from medical monitoring could not itself sustain a negligence claim. The court explained that while medical monitoring could be *damages* in a properly-pled negligence claim, it was not an *injury*. *Id.* at 689-691 ("Because plaintiffs have not alleged a present physical injury, but rather, "bare" damages, the medical expenses plaintiffs claim to have suffered (and will suffer in the future) are not compensable.") (citing Cooley on Torts (4th ed., § 32); Prosser & Keeton, Torts (5th ed., § 30)).

In *Wood v. Wyeth-Ayerst Laboratories, Div. of Am. Home Prod.*, 82 S.W.3d 849 (Ky. 2002); the court held that exposure "to an agent that had the potential to result in serious future medical consequences, but which had not produced actual physical harm at the time of the suit," could not sustain a negligence claim. *Id.* at 854-55 ("'The words 'physical harm' are used to denote physical impairment of the human body, or of tangible property' . . . [the plaintiff's] body has not yet been impaired by her ingestion" of the contaminant) (quoting Restatement (Second) of Torts, § 7, comment (e) (1965)).

[5] In their reply brief (but not in their proposed complaint), Plaintiffs state: "It is expected that Plaintiffs' expert(s) will testify at trial that each of the Plaintiffs who were exposed to such hazardous levels of lead and arsenic has in fact experienced at least one of those damages." [DE 170 at 8]. It is unclear whether the expert would testify that Plaintiffs have present physical injuries that they are unaware of, or that they have the exposure and "subclinical" changes previously established as insufficient to sustain a negligence claim. In any case, allegations made in briefing are not incorporated into the proposed complaint. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) ("[A] plaintiff may not amend his complaint in his response brief.").

In so finding, the Court remains mindful of the Seventh Circuit's direction that leave to amend be liberally granted to cure procedural deficiencies. If it seemed that Plaintiffs had sustained present injuries and had not yet pled them due to an honest belief that it was not necessary, the situation might be different. However, Judge Van Bokkelen's opinion clearly explained that Plaintiffs needed to allege injury, not just exposure, and granted them ample time to do so. Given how long Plaintiffs have had to gather evidence of injury, it appears that these plaintiffs have not sustained present physical injuries from the contamination, or cannot support such allegations in their complaint. The deficiencies are substantive, not procedural, so there is no cause to allow the plaintiffs who have not alleged a physical injury to re-plead based on the same theory.

### 2.      Plaintiffs with a present physical injury

The remaining 13 plaintiffs allege a present physical injury caused by the contamination. The Hammond Defendants argue there are no specific allegations linking each plaintiff's injuries to the contamination, so the allegations "assert nothing more than that those Plaintiffs have medical conditions of some kind." [DE 171 at 5-6]. But at the pleading stage, all that is needed are facts supporting a plausible inference that these plaintiffs developed these illnesses at least in part from the exposure to contaminants. *Rolan v. Atl. Richfield Co.*, No. 1:16-CV-357-TLS, 2017 WL 3191791, at *18 (N.D. Ind. July 26, 2017) (causation issue "requires a more factually intensive inquiry" than appropriate at the motion to dismiss stage).

Plaintiffs allege they were exposed to the contaminants at dangerous levels [*see, e.g.,* DE 168-1 ¶¶ 6, 9, 127-130, 151]. They list a series of illnesses for which they were at "increased risk" due to the exposure [¶¶ 12-60 (allegations specific to each plaintiff), ¶ 129 (general allegations)]. The Court's review indicates that 11 plaintiffs allege they have at least one of these ailments linked to the contaminants. [*E.g.,* ¶ 19 "Kemiqua Funches currently suffers from high blood pressure,

diabetes . . . and anemia."]. Those 11 plaintiffs have adequately alleged injury, and can be permitted to proceed with negligence claims.

The allegations as to two plaintiffs are insufficient. Plaintiffs Austin Jackson and Jeremy Hayes each allege they suffer from "conditions including upper respiratory problems, asthma, and chronic bronchitis." [¶¶ 28, 29]. None of those ailments are listed among those caused by the contaminants. [*See* ¶¶ 28, 29, 129]. Perhaps another illness on the list (such as hypertension) could lead to breathing issues, but allegations of "upper respiratory problems," with no other context, are too vague. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). With respect to the negligence claims of these two plaintiffs, the request to amend is denied without prejudice.

## C. Negligent Infliction of Emotional Distress

Plaintiffs also attempt to re-plead their negligent infliction of emotional distress ("NIED") claim. Judge Van Bokkelen dismissed the claim, finding that because Plaintiffs did not plead an injury sufficient to sustain a negligence claim, they could not bring a separate NIED claim, even if they alleged emotional distress as an injury. In other words, there can be no NIED claim unless accompanied by a properly pled, "ordinary" negligence claim. *See* [DE 163 at 14]; *Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011) ("We have never permitted . . . an action seeking damages for emotional distress predicated upon a breach of an alleged duty not to inflict emotional injury on another. Such independent, stand-alone actions for negligent infliction of emotional distress are not cognizable in Indiana.").[6]

---

[6] *See also Fitzpatrick v. City of Hobart*, No. 2:03-CV-359-PPS-APR, 2006 WL 2736127, at *9 (N.D. Ind. Sept. 25, 2006) ("Plaintiffs have not asserted any negligence claim against the Kundrats or any other defendant. Accordingly, we do not consider their claim for negligent infliction of emotional distress."); *Doe v. Lafayette Sch. Corp.*, 846 N.E.2d 691, 701 (Ind. Ct. App. 2006) ("Doe must first prevail on a negligence claim against LSC; thereafter, she is free to claim damages for emotional distress") (abrogated on other grounds by *State Farm Mut. Auto. Ins. Co. v. Jakupko*, 856 N.E.2d 778 (Ind. Ct. App. 2006)); *Ryan v. Brown*, 827 N.E.2d 112, 118 (Ind. Ct. App. 2005) ("[I]n order for the Ryans to assert a claim for negligent infliction of emotional distress they must first prevail in a claim of negligence.").

However, the Court believes the Indiana Supreme Court's recent opinion in *Community Health Network, Inc. v. McKenzie*, 185 N.E.3d 368 (Ind. April 11, 2022), issued after Judge Van Bokkelen's opinion on the prior dispositive motions, supports an alternate interpretation. Considering that new case, and without prejudice to any future determination by Judge Van Bokkelen, the undersigned is not "certain" that the proposed claims would lose a motion to dismiss.

In *Community Health*, the plaintiffs sued a health care provider after an employee gained unauthorized access to their medical records. The plaintiffs brought claims for vicarious liability based on the employee's negligence, and negligent supervision and hiring by the health care provider. There was no mention of physical impact or injury; the plaintiffs sought to recover for emotional distress damages only. *See* 185 N.E.3d at 379. Under Defendants' preferred interpretation of *Spangler*, the claims should have been dismissed outright, since there was no injury that would sustain an ordinary negligence claim. Instead, the Indiana Supreme Court, citing *Spangler*, suggested that emotional damages alone could sustain a claim. The Court applied the modified-impact rule, ultimately finding that the plaintiffs could not recover under that rule because the plaintiffs did not sustain a physical impact.[7] But the court concluded: "*[B]ecause emotional-distress damages are unavailable to Plaintiffs*, both negligence claims fail." *Id*. (emphasis added). It seems that if those plaintiffs *had* satisfied the modified-impact test, they would have been permitted to proceed with a claim for emotional distress damages, even with no other cognizable injury.[8]

---

[7] The court also considered the possibility of recovery under the "bystander rule," which does not apply to the facts of this case. The bystander rule permits an NIED claim even in the absence of physical impact on the plaintiff, if the plaintiff has "witnessed or come to the scene soon []after the death or severe injury of certain classes of relatives." *Spangler*, 958 N.E.2d at 466.

[8] Another court discussing *Spangler* appears to have made a similar interpretation. *See Vestal v. Heart of CarDon, LLC*, No. 217CV00155JMSMJD, 2018 WL 3008638, at *12 (S.D. Ind. June 15, 2018) (in a case with no physical

As applied to this case: *Community Health* suggests that Plaintiffs may be able to proceed with an NIED claim[9], even if their only cognizable injury is emotional distress. The proposed complaint supports an inference that Plaintiffs could satisfy the modified-impact rule, because Defendants caused a direct physical impact: Plaintiffs' contact with the contaminants.[10] [DE 168-1, ¶¶ 5-7, 9, 104, 109]. And the complaint plausibly alleges that Plaintiffs have suffered emotional distress from the fear of themselves or their families contracting an illness in the future. [¶¶ 12-60, 159]; *see Community Health*, 185 N.E.3d at 379 ("The undisputed facts show that the Plaintiffs suffered fear, anxiety, or sadness—emotional distress"). Assuming as true the allegation that prolonged contact with the contaminants significantly increases the risk of illness, it is reasonable to infer that this is not an ordinary, transient, or trivial fear. *Cf. Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 999-1000 (Ind. 2006) (affirming dismissal of an NIED claim from plaintiffs sharing a flight with an unruly passenger who lit cigarettes: "We do not suggest that the Cooks' fear and anxiety during the flight were trivial. But there was simply nothing . . . suggesting that the Cooks' fear and anxiety were anything other than temporary.").

While it is typically futile to "reassert[] claims previously determined," *City of Naperville*, 114 F. Supp. 3d at 610, this case is unusual because the *Community Health* decision was released so recently. Judge Van Bokkelen was not able to consider the case, and the parties have not briefed

---

injury alleged, court remarked that NIED "is permitted, as relevant here, where the 'defendant's breach of a legal duty to the plaintiff' causes a 'direct impact' upon the plaintiff").

[9] For clarity, the Court refers to this as an NIED claim even though the claims in the *Community Health* decision were not given that label. The point is that this is would be a claim for emotional distress damages, rather than one premised on physical injury.

[10] *See Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989, 996 (Ind. 2006) (citing cases); *Bader v. Johnson*, 732 N.E.2d 1212, 1221 (Ind. 2000) (claimant can satisfy the test "even though the physical impact was slight"); *Conder v. Wood*, 716 N.E.2d 432, 435, n. 3 (Ind. 1999) (holding that the impact does not have to be directly initiated by the tortfeasor: "It matters little how the physical impact occurs, so long as that impact arises from the plaintiff's direct involvement in the tortfeasor's negligent conduct."); *Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 996 (Ind. Ct. App. 1998) (ingestion of a portion of vegetables cooked with a worm was a direct physical impact).

or otherwise addressed it. "It is not the Court's responsibility to research the law and construct the parties' arguments for them," *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021), and the fact that no one has addressed this case cuts against a finding that these claims are certain to lose a motion to dismiss. Therefore, Plaintiffs will be permitted to file an amended complaint that includes an NIED claim based on their allegations of emotional distress.

**D.     Medical Monitoring**

Plaintiffs seek to plead a separate cause of action for medical monitoring. [DE 168-1, ¶¶ 160-169]. As discussed in oral argument, there is no independent cause of action for medical monitoring. *See Johnson v. Abbott Labs.*, No. 06C01-0203-PL-89, 2004 WL 3245947, at *6 (Ind. Cir. Ct. Dec. 31, 2004) ("Indiana does not recognize medical monitoring as a cause of action."); *Hunt v. Am. Wood Preservers Inst.*, No. IP 02-0389-C-M/S, 2002 WL 34447541, at *1 (S.D. Ind. July 31, 2002) (a "medical monitoring claim . . . is not cognizable in the State of Indiana"). In the context of this motion to amend, the Court does not need to determine whether medical monitoring can be an appropriate form of damages for an existing claim.

### III.     CONCLUSION

Plaintiffs will be permitted to file an amended complaint consistent with the findings described herein. In summary:

- The 11 plaintiffs who properly alleged present physical injuries [*see* DE 168-1 ¶¶ 19-21, 24-29, 45, 58-60] may pursue a claim of negligence based on their present physical injuries;

- The request to amend the negligence claims of Plaintiffs Austin Jackson [¶ 28] and Jeremy Hayes [¶ 29] is denied without prejudice;

- All plaintiffs may pursue a claim for negligent infliction of emotional distress;

- No plaintiffs may pursue a separate cause of action for medical monitoring.

The Court **GRANTS in part and DENIES in part** Plaintiffs' Motion for Leave to File Second Amended Complaint [DE 168], as described herein. Plaintiffs are granted until **October 24, 2022** to file an amended complaint consistent with this opinion.

So ORDERED this 23rd day of September, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT